Approved: *Thomas John Wright*            **ORIGINAL**
          THOMAS JOHN WRIGHT
          Assistant United States Attorney

Before:   THE HONORABLE DEBRA FREEMAN      **20 MAG 6178**
          United States Magistrate Judge
          Southern District of New York

------------------------------ x
                                 :  **COMPLAINT**
                                 :
UNITED STATES OF AMERICA         :  Violations of
                                 :  18 U.S.C. §§ 371,
     - v. -                      :  922(a)(1)(A), 922(g)(1),
                                 :  924(a), and 2
JAYVON HAIR,                   :
    a/k/a "Scooby," and           :  COUNTY OF OFFENSE:
DYSHAN FRASIER,                :  NEW YORK
    a/k/a "Montana,"              :
                                 :
                 Defendants.    :
------------------------------ x

SOUTHERN DISTRICT OF NEW YORK, ss.:

       DANIEL KONESCHUSKY, being duly sworn, deposes and says that he is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and charges as follows:

## COUNT ONE

### (Firearms Trafficking Conspiracy)

       1.    From at least in or about August 2019 up to and including at least in or about October 2019, in the Southern District of New York and elsewhere, JAYVON HAIR, a/k/a "Scooby," and DYSHAN FRASIER, a/k/a "Montana," the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, trafficking in firearms, in violation of Title 18, United States Code, Section 922(a)(1)(A).

       2.    It was a part and object of the conspiracy that JAYVON HAIR, a/k/a "Scooby," and DYSHAN FRASIER, a/k/a "Montana," the defendants, and others known and unknown, not being licensed importers, licensed manufacturers, and licensed dealers of firearms within the meaning of Chapter 44, Title 18, United States Code, would and did willfully and knowingly engage in the

business of dealing in firearms, and in the course of such business would and did ship, transport, and receive firearms in interstate and foreign commerce, in violation of Title 18, United States Code, Section 922(a)(1)(A).

### Overt Acts

3. In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

   a. On or about August 6, 2019, in a telephone conversation, JAYVON HAIR, a/k/a "Scooby," the defendant, directed an undercover police officer of the New York City Police Department ("UC-1"), in substance and in part, to meet DYSHAN FRASIER, a/k/a "Montana," the defendant, to purchase multiple firearms.

   b. On or about August 6, 2019, in New York County, New York, FRASIER sold six firearms to UC-1.

   c. On or about October 7, 2019, in a telephone conversation, HAIR directed UC-1, in substance and in part, to meet FRASIER to purchase multiple firearms.

   d. On or about October 10, 2019, in New York County, New York, FRASIER sold seven firearms to UC-1.

(Title 18, United States Code, Section 371.)

### COUNT TWO

### (Firearms Trafficking)

4. From at least in or about August 2019 up to and including at least in or about October 2019, in the Southern District of New York and elsewhere, JAYVON HAIR, a/k/a "Scooby," and DYSHAN FRASIER, a/k/a "Montana," the defendants, not being licensed importers, licensed manufacturers, and licensed dealers of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully and knowingly engage in the business of dealing in firearms in interstate and foreign commerce, to wit, on at least two occasions in or about August 2019 and October 2019, HAIR and FRASIER illegally sold firearms manufactured outside of New York in New York County, New York.

(Title 18, United States Code, Sections 922(a)(1)(A), 924(a)(1)(D), and 2.)

2

### COUNT THREE

### (Felon in Possession of Firearms)

5. From at least in or about August 2019 up to and including at least in or about October 2019, in the Southern District of New York and elsewhere, DYSHAN FRASIER, a/k/a "Montana," the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess firearms in and affecting commerce, to wit, on at least two occasions in or about August 2019 and October 2019, FRASIER possessed firearms in New York County, New York, and the firearms were in and affecting commerce.

(Title 18, United States Code, Section 922(g)(1), 924(a)(2), and 2.)

6. The bases for my knowledge and for the foregoing charges are, in part, described in the following paragraphs.

7. I am a Special Agent with the ATF assigned to the Joint Firearms Task Force ("JFTF"), which is comprised of local, state, and federal law enforcement personnel in the metropolitan area of the City of New York and focuses upon the investigation of crimes involving firearms. I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents, witnesses, and other individuals, as well as my examination of reports and other records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported in this Complaint, they are reported in substance and in part, except where otherwise indicated.

8. Based on my conversations with other law enforcement officers about multiple transactions involving the purchase of firearms, and my review of reports and other records generated from the investigation of those transactions, including multiple video and audio recordings, I have learned, among other things, the following, in substance and in part:

    a. In or about August 2019, UC-1 began participating in communications transmitted over a cellphone assigned a telephone number ending in 7977 (the "7977 Number")

3

with a male ("UM-1"), who referred to himself as "Scooby" and with whom UC-1 discussed the purchase of firearms.

    b. On or about August 6, 2019, UM-1 called UC-1 from the 7977 Number and participated in a telephone conversation with UC-1 regarding the purchase of six firearms, which UM-1 had previously negotiated with UC-1 to sell to UC-1 for $3,500.00. In particular, UM-1 stated, in substance and in part, that UM-1 would send his "brother" or "right hand man" to complete the transaction, and directed UC-1, in substance and in part, to meet that individual to purchase the firearms.

    c. Later that same day, another male ("UM-2"), who referred to himself as "Montana," called UC-1 from a cellphone assigned a telephone number ending in 9463 (the "9463 Number"), informed UC-1, in substance and in part, that he was "Scooby's" "brother" or "right hand man," and arranged with UC-1 to meet UC-1 in the vicinity of Tompkins Square Park in New York County, New York to conduct the firearms sale.

    d. Later that same day, UM-2, with whom UC-1 had participated in further communications transmitted over the 9463 Number, met UC-1 in the vicinity of Tompkins Square Park inside UC-1's car. A camera in UC-1's car recorded the entirety of the ensuing transaction between UC-1 and UM-2, whose face is clearly visible in the audio and video recording. Once inside the car, UM-2 and UC-1 participated in a conversation regarding the purchase of six firearms, which UM-1 had previously negotiated with UC-1. In connection with that conversation, UM-2 initiated on an iPhone on his person a communication over FaceTime with "Scooby," whose alias and whose voice, based on prior telephone conversations, UC-1 recognized as that of UM-1. In the ensuing FaceTime conversation, during UM-1 appeared via live video and audio, UC-1, UM-1, and UM-2 discussed the contemplated transaction and reconfirmed its terms, after which UM-2 handed UC-1 a bag containing five firearms and ammunition and one additional firearm that he removed from a pocket of his pants in exchange for $3,500.00.

    e. A subsequent inventory of the purchase on August 6, 2019 from UM-1 and UM-2 identified multiple items, including the following firearms: (i) one 9mm caliber Springfield Armory pistol; (ii) one 9mm caliber Taurus International pistol; (iii) one .380 caliber Bersa pistol; (iv) one 9mm caliber Kahr Arms pistol; (v) one .38 caliber Smith & Wesson revolver; and (vi) one 9mm caliber Smith & Wesson pistol.

4

f. A subsequent investigation of UM-1 identified a social media account associated with the 7977 Number, the name "aintyou scooby," and a photograph of a male. Based on further investigation, law enforcement officers identified a prior arrest photograph of JAYVON HAIR, a/k/a "Scooby," whose record of arrest and prosecution from South Carolina lists an alias of "Scooby." Based on my review of the photograph of the male from the social media account and the prior arrest photograph of HAIR, I believe that both photographs depict HAIR.

g. On or about August 7, 2019, UC-1 viewed a photograph array and identified the prior arrest photograph of HAIR as UM-1.

h. Following the sale of firearms on August 6, 2019, UC-1 participated in a series of further communications with HAIR that related to the purchase of additional firearms and that were transmitted over a cellphone assigned a telephone number ending in 6907 (the "6907 Number"), which HAIR informed UC-1 was his new telephone number.

i. On or about October 6, 2019, UC-1 called the 6907 Number and participated in a telephone conversation with UM-2, who answered the call on behalf of HAIR. During this call, UM-2 identified himself to UC-1 as the individual who had participated in the prior transaction with UC-1, and stated, in substance and in part, that he was preparing to bring a shipment of firearms to the metropolitan area of the City of New York.

j. The following day, on or about October 7, 2019, UC-1 called the 9463 Number and participated in a telephone conversation with UM-2 and then HAIR to whom UM-2 passed the cellphone. HAIR then negotiated the sale of seven firearms to UC-1 for $4,000.00 and directed UC-1 to meet UM-2 to purchase the firearms.

k. On or about October 10, 2019, UM-2, with whom UC-1 had participated in further communications transmitted over the 9463 Number, again met UC-1 in the vicinity of Tompkins Square Park in New York County, New York inside UC-1's car. A camera inside UC-1's car again recorded the entirety of the ensuing transaction between UC-1 and UM-2, whose face is clearly visible in the audio and video recording. During this transaction, UM-2 handed UC-1 a bag containing seven firearms and ammunition in exchange for $4,000.00.

l. A subsequent inventory of the purchase on October 10, 2019 from HAIR and UM-2 identified multiple items,

5

including the following firearms: (i) one 9mm caliber SCCY Model CPX-2 pistol; (ii) one 9mm caliber SCCY Model CPX-1 pistol; (iii) one 9mm Walther pistol; (iv) one Accu-Tek .380 caliber pistol; (v) one .22 caliber Walther pistol; (vi) one .40 caliber Springfield Armory pistol; and (vii) one Kimber .380 caliber pistol.

  m. A subsequent investigation of UM-2 identified a prior arrest photograph of DYSHAN FRASIER, a/k/a "Montana," the defendant. Based on my review of the audio and video recordings of the transactions on August 6, 2019 and October 10, 2019, in which the face of UM-2 is clearly visible, and my comparison of those recordings to the prior arrest photograph of FRASIER, I believe that UM-2 is FRASIER.

  n. Thereafter, on or about November 4, 2019, in a photograph array, which included the photographs of six individuals, including the prior arrest photograph of FRASIER, UC-1 identified FRASIER as UM-2.

  9. Based on my training and experience and my involvement in this investigation, I believe that multiple of the firearms that JAYVON HAIR, a/k/a "Scooby," and DYSHAN FRASIER, a/k/a "Montana," the defendants, sold to UC-1 both in or about August 2019 and in or about October 2019 were not manufactured in New York.

  10. Finally, I have reviewed the criminal history of DYSHAN FRASIER, a/k/a "Montana," the defendant, and learned that on or about October 2, 2013, FRASIER was convicted in the Fifteenth Judicial Circuit Court of South Carolina, Georgetown County of Common Law Robbery, in violation of South Carolina Code of Laws § 16-11-325, and that on or about October 29, 2013 was sentenced to a term of imprisonment of nine years.

WHEREFORE, deponent respectfully requests that arrest warrants be issued for JAYVON HAIR, a/k/a "Scooby," and DYSHAN FRASIER, a/k/a "Montana," the defendants and that they be arrested, and imprisoned or bailed, as the case may be.

s/Daniel Koneschusky, by the Court, with permission
DANIEL KONESCHUSKY
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Sworn to me through the transmission of this
Complaint by reliable electronic means (FaceTime), pursuant to
Federal Rule of Criminal Procedure 4.1, on
June 12, 2020

THE HONORABLE DEBRA FREEMAN
United States Magistrate Judge
Southern District of New York